UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL DAVID HARLAND, ) | CASE NO. 04-80019-CIV-MIDDLEBROOKS |
| ) | (02-80094-CR-MIDDLEBROOKS) |
| Movant, ) | MAGISTRATE JUDGE P.A. WHITE |
| ) | |
| v. ) | |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | GOVERNMENT'S ANSWER TO |
| ) | DEFENDANT'S MOTION TO VACATE |
| Respondent. ) | <u>SENTENCE UNDER 28 U.S.C. §2255</u> |
| _____) | |

The United States of America, by and through the undersigned Assistant United States Attorney, files this answer to the defendant's motion to vacate pursuant to 28 U.S.C. §2255. For the reasons set forth below, the motion should be dismissed.

## I. **STATEMENT OF THE CASE**

A.  <u>Course of Proceedings and Disposition in the Court Below</u>.

On May 28, 2002, a federal grand jury in the Southern District of Florida returned a forty-count indictment charging appellant, Michael David Harland, with twenty-six counts of manufacturing child pornography, thirteen counts of using a computer to distribute child pornography, and one count of possession of child pornography. (D.E. 3)  Harland pled guilty to the charges on August 28, 2002. (D.E. 35). On June 6, 2002, United States District Judge Donald M. Middlebrooks granted the United States' motion for upward departure and sentenced Harland to 216 months as to counts 1 through 26, 180 months as to counts 27 through 39, and 60 months as to count 40. (D.E. 60) All counts were to run concurrently.

On January 13, 2004, movant filed the instant motion to vacate, set aside, or correct



sentence pursuant to 28 U.S.C. §2255. On April 8, 2004, the government was directed to respond by the Honorable Patrick A. White, United States Magistrate Judge, to movant's motion to vacate by or before May 3, 2004.[1]   The government's answer follows.

B.    Statement of the Facts.

This case involves an international ring of child pornography manufacturers. The membership of the ring includes but is not limited to defendant, Michael David Harland ("Harland"), Lloyd Alan Emmerson ("Emmerson"), Paul Gordon Whitmore ("Whitmore"), Leslie Peter Bowcut ("Bowcut"), Daniel Boobar ("Boobar"), William Degelman ("Degelman"), Alberto Caselli a/k/a Dion ("Caselli"), and Dirk-Jan Prins ("Prins"). The victims are almost exclusively children of the members of the ring, however, in some instances the victims are friends or relatives.

On January 25, 2002, the Resident Agent Fresno California ("RA/Fresno") received information that an international investigation initiated by the Danish National Police had identified Lloyd Emmerson of Clovis, California as a suspected sexual abuser of children. On January 26, 2002, Emmerson was arrested on California state charges including sexual exploitation of a child under 14 years old, and use of a minor to engage/pose/model in sexual conduct, with a lewd conduct with a child under 14 years old.

Subsequently, Emmerson supplied the RA/Fresno with information identifying several individuals as producers of child pornography. Emmerson identified Michael David Harland as

---

[1] United States Magistrate Judge Patrick A. White, who is assigned to this case, was an Assistant United States Attorney in the Southern District of Florida (Miami Office) from February 1989 through March 2003. As far as the undersigned is aware, Magistrate Judge White was not involved in this case when he was an Assistant United States Attorney.

2

one of the manufacturers of child pornography. The Clovis Police Department mailed a CD-ROM containing pornographic images of E.H. seized from the computer of Lloyd Emmerson to U. S. Customs Special Agent Jack Watkins at RA/WPB. The CD-ROM contained a copy of the files transmitted to him, by Harland, via computer, which contained numerous images of E.H. engaged in sexually explicit conduct.

On March 11, 2002, S/A Martin I. Ruiz de Gamboa and S/A Greg H. Stine along with PBSO deputies effected a consent search on the residence of Michael David Harland. Harland admitted that he manufactured child pornography of E.H. and distributed it. Harland said he would wait until is current wife, Pamela Picoli and I.H. were not at home to take the pictures. Harland claimed he never penetrated or engaged in oral sex with E.H. Harland also said he never masturbated in front of E.H. Harland admitted having genital-genital sexual contact with E.H. as portrayed in several of the recovered pictures, specifically the picture titled P9090215.

Harland was asked whom he had sent or distributed the pictures of E.H. to. Harland advised that he had sent the images to three or four people he had met on the Internet. Harland recalled he had e-mailed the images to a man named "Lloyd" in Southern California and to someone else named "Paul".

On June 18, 2002, Detective Patrick Paige and S/A Watkins received authorization from Morningstar Nursery to perform a forensic analysis of the Maxtor computer hard drive that Harland used while he was employed at Morningstar. Detective Paige prepared a 58 page forensic report of the Morningstar computer hard drive that included numerous images of child pornography of E.H., J.E., C.E., M.W., and V.B. In addition, Det. Paige found numerous ICQ chat logs spanning several years of communications between Harland and members of the ring:

3

Emmerson, Whitmore, Boobar, Prins, and Caselli.

### 1.     Lloyd Emmerson a/k/a "Lotus"

Lloyd Emmerson and Harland communicated via ICQ chats from at least as early as September 20, 1999 to February 15, 2001. During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography of J.E., C.E., A. LNU, T.T., V.B., M.G., and A.G that Emmerson had manufactured. During these ICQ chats Harland would request that Emmerson manufacture child pornography of J.E. engaged in sexually explicit acts. Harland and Emmerson repeatedly discussed various ways of finding children that would be available to pose for the production of child pornography. Harland told Emmerson that he should engage in sexual activity with J.E. and C.E. On January 26, 2002, Emmerson was arrested and charged with manufacturing child pornography. The investigation of Emmerson has uncovered 24 minor female victims.

### 2.     Paul Whitmore a/k/a "Daj," "Digitalguy," & "PaulsArt"

Paul Whitmore, a psychotherapist at a private school for children with severe behavior disorders, and Harland communicated via ICQ chats from at least as early as September 6, 2000 to February 15, 2001. During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography of M.W. and T. LNU that Whitmore had manufactured. Whitmore also photographed C.S., and K.LNU. During these ICQ chats Harland would request that Whitmore manufacture child pornographic images of M.W. engaged in specific sex acts such as masturbating Whitmore or slowly undressing. When Whitmore informed Harland that M.W. sometimes became afraid when she engaged in those acts, Harland explained that he was excited by her fear. Harland and Whitmore repeatedly discussed various

ways of finding children that would be available to pose for the production of child pornography. On January 27, 2002, Whitmore was arrested on state charges and currently faces 27 counts of aggravated child abuse. The investigation of Whitmore has uncovered 8 minor female victims.

### 3. Daniel Boobar a/k/a "loltot"

Daniel Boobar and Harland communicated via ICQ chats from at least as early as June 3, 1999 to January 25, 2001. During this time Harland distributed images of child pornography of E.H. that he manufactured to Boobar. In at least one instance Harland engaged in a web video teleconference in which Boobar masturbated while watching, in real time, Harland engage in simulated sexual intercourse on E.H.

On November 1, 2002, Boobar was arrested for conspiracy to manufacture child pornography. The investigation of Boobar is ongoing but has not uncovered any victims to date.

### 4. Alberto Caselli a/k/a "Dion"

Alberto Caselli and Harland communicated via ICQ chats from at least as early as August 30, 2000 to January 2, 2001. During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography that Caselli had manufactured. During these ICQ chats Caselli requested images of E.H. engaged in specific sex acts such as performing oral intercourse on Harland. Harland admitted that he had engaged in masturbation with E.H. Harland also encouraged Caselli to engage in sex acts with L.LNU. Caselli had not been arrested and is believed to live in Europe. Caselli was introduced to the ring by Dirk-Jan Prins.

### 5. Dirk-Jan Prins a/k/a "Dirk-Jan"

Dirk-Jan Prins and Harland communicated via ICQ chats from at least as early as October

5, 2000 to November 17, 2000. During this time Harland traded images of child pornography of E.H. that he manufactured for images of child pornography of Lo.LNU. During these ICQ chats Harland and Prins discuss traveling to third world countries to manufacture child pornography. Harland declared that "one day" he will "teach" E.H. how to have sexual intercourse. Prins explicitly expresses his desire to engage in sexual conduct with E.H. including vaginal and anal sex. Prins was arrested on February 5, 2002.

## II. ARGUMENT: PROCEDURAL BARS

This section outlines the general rules governing the various procedural bars relevant to movant's §2255 motion. The applicability of each such procedural bar to movant's particular arguments raised in the motions is discussed alongside the relevant arguments.

A.    All Claims Not Asserted at Trial Level and on Appeal Are Procedurally Defaulted

To the extent that any of Movant's claims are not time-barred under §105 of the AEDPA many of them are procedurally defaulted.

Issues capable of being raised but which were not raised at trial or on direct appeal from a conviction cannot be raised in a §2255 proceeding unless the defendant can show cause for his procedural default and prejudice arising from his failure to raise those claims. *McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454, 1470 (1991); *United States v. Frady*, 456 U.S. 152, 167-69, 102 S. Ct. 1584, 1594-95 (1982); *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) ("[A] procedural default of even a constitutional issue will bar review under §2255, unless the defendant can meet the 'cause and prejudice' test"); *Parks v. United States*, 832 F.2d 1244, 1245-46 (11th Cir. 1987). Where a defendant makes no showing of cause and prejudice pertaining to his failure to raise issues on direct appeal that are raised for the first time in a §2255 motion,

summary dismissal of those claims is warranted. *See Garland v. United States*, 837 F.2d 1563, 1565 n.4 (11th Cir. 1988).

"'[C]ause under the cause and prejudice test must be something <u>external</u> to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2446, 2566 (1991) (emphasis in original). "Objective factors that constitute cause," <u>McCleskey</u>, 111 S. Ct. at 1470, include "interference by officials," or "a showing that the factual or legal basis for a claim was not reasonably available to counsel," *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate prejudice so substantial that it undermines the integrity of the entire proceeding. *Frady*, 456 U.S. at 170. In this case, movant cannot show prejudice because he failed to appeal any issues and thus is procedurally defaulted for the issues raised in his § 2255 motion.

### III. ARGUMENT: SCOPE OF SECTION 2255

This section outlines the general rule governing the scope of relief available under §2255. Those claims raised by movant's motion to which §2255 does not provide a possible remedy are identified.

Section 2255 is not a substitute for a direct appeal, and available grounds for relief under §2255 are extremely narrow. Section 2255 states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

As the Eleventh Circuit has explained, "Relief under 28 U.S.C. §2255 'is reserved for

transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988).

### IV. CLAIMS PRESENTED AND LEGAL ARGUMENT

Harland raises one claim in his §2255 petition to vacate his sentence. He argues that his counsel was ineffective for failing to advise him of his right to appeal his sentence.

This claim does not have merit. Harland does not claim that he instructed his counsel to file a notice of appeal. He claims that his counsel "[a]dvised [him] to waive his appeal rights because there was 'nothing he could appeal on his sentence.'" Thus, it appears from Harland's petition that he discussed the possibility of pursuing and appeal and "his attorney told him that there was nothing about his sentence that could be appealed and it would be in his best interest to waive his appellate rights." To the contrary, Harland's counsel specifically remembers advising Harland of his appellate rights. To the extent Harland was perhaps unclear in expressing his interest in filing or not filing an appeal, Harland's attorney was not deficient in failing to file an appeal under the circumstances.

### A. Harland's Claim of Ineffective Assistance Has No Merit

Harland has not claimed in his §2255 petition that he specifically directed his attorney to file a notice of appeal, and his attorney neglected to do so. As with all claims of ineffective assistance, petitioner's claim concerning failure to file a notice of appeal must satisfy the two-part test long ago established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Harland must show, first, that his counsel's representation "fell below an objective standard of reasonableness; " *Strickland*, 466 U.S. at 688, and second,

8

that his counsel's deficient performance prejudiced him. *Id.* at 694. Where an attorney has neglected to file a *requested* notice of appeal, courts have found the attorney's performance *per se* professionally unreasonable and deficient. *See Flores-Ortega*, 528 U.S. at 477 (citing *Rodriguez v. United States*, 395 U.S. 327 (1969)). On the other hand, where a defendant has instructed his counsel not to file an appeal, the defendant will not later be heard to argue that his counsel performed deficiently in not filing an appeal. *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Harland essentially asserts that his case falls into the category of *per se* deficient performances by counsel because his attorney allegedly failed to advise Harland of his right to file an appeal. However, Harland's contention regarding the actions of his attorney are inaccurate.

According to Harland's attorney (see Affidavit of Scott I. Suskauer, Esq., Exhibit 1), Harland never directed the attorney to file an appeal. To the contrary, Harland's conduct only suggested to the attorney that Harland had no interest in filing an appeal. It appears that Harland never asked his defense attorney to file an appeal. Based on the petition and Exhibit 1 of this answer, it appears that all of the conversations between Harland and his attorney regarding Harland's appeal involved a discussion of Harland's knowing waiver of appeal. Based on these facts, Harland's conduct could properly be characterized as implicit, if not explicit, direction to his attorney to not file an appeal. Harland, therefore, should not now be heard to complain regarding his attorney's failure to file a notice of appeal. *See Jones*, 463 U.S. at 751.

For purposes of argument, however, the government will assume that Harland was not clear in relating his wishes to his attorney. In *Flores-Ortega*, the Supreme Court set out guidance

9

for evaluating ineffective assistance claims in exactly this context.

Applying the two-part *Strickland* test, the Supreme Court instructed that the first question to be considered is whether the attorney consulted with the defendant regarding an appeal. 528 U.S. at 478. Or if there was no consultation, was that failure necessarily deficient. *Id.* Harland's attorney specifically recalls a conversation with Harland post-sentence in which he advised Harland about his rights to appeal the upward departure. Harland's attorney explained to him that it was his belief that the Judge indicated that he would sentence the defendant to the exact same sentence if the case came before him. This is because the Judge did not sentence Harland to the top end of the guidelines and presumably if Harland were to prevail on the two level upward departure a sentence at the high end of the guidelines would result in the same sentence.

In support of his claim that his attorney did fail in his duties, Harland suggested that there were various nonfrivolous grounds for appeal. As an example, Harland argues that the Court's decision to depart upward should have been appealed. However, given the facts of this case the Court was well within its discretion to depart upwards.

The court issued a thoughtful and well reasoned opinion citing case law that supported its decision to depart upward. Under the circumstances of Harland's case, a rational defendant in Harland's position may not have sought an appeal. Moreover, Harland never indicated an interest in appealing. Because Harland cannot establish that his counsel's performance was deficient, he is not entitled to relief under §2255. Thus, having failed to show that his counsel was deficient, Harland is not entitled to relief under his §2255 petition.

## V. THE COURT SHOULD DISMISS
## HARLAND'S MOTION WITHOUT A HEARING

It is well-settled that the simple filing of a §2255 motion does not establish any right to a hearing. *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977). A movant must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief. *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990); *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987); *Newfield*, 565 F.2d at 207. To warrant a hearing, a movant "must establish that he has a 'plausible' claim." *United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2d Cir. 1993) (no right to hearing where ineffective assistance claim not "plausible"); *United States v. Salerno*, 868 F.2d 524, 541 (2d Cir.) (no right to hearing where conclusory assertions raise no plausible issue), *cert. denied*, 491 U.S. 907 (1989).

Where a movant's claims, even if true, fail to state a claim upon which habeas relief can be granted, or if the claims are based solely on "vague, conclusory, or palpably incredible" allegations, such claims are subject to dismissal without a hearing. *Machibroda v. United States*, 368 U.S. 487, 495, 82 S. Ct. 510, 514 (1962); *accord Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105 (1992).

Where the §2255 motion, files and records of the case conclusively show that the defendant is not entitled to relief, no evidentiary hearing is required. *Anderson v. United States*, 948 F.2d 704, 706 (11th Cir. 1991); *Tejada*, 941 F.2d at 1559. However, if the trial record is inadequate to show <u>conclusively</u> that the defendant's contentions are without merit, the district court must conduct a hearing. *Anderson*, 948 F.2d at 706. However, a hearing is not required

"'where the petitioner's allegations are affirmatively contradicted in the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *United States v. Guerra*, 588 F.2d 519, 521 (5th Cir. 1979)), <u>cert. denied</u>, 450 U.S. 934 (1981); *accord Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984).

Because the record establishes that Harland's claim lacks merit, the government respectfully requests that the Court dismiss the defendant's motion without a hearing.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the defendant's §2255 motion.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By:_____
LOTHROP MORRIS
ASSISTANT U. S. ATTORNEY
Florida Bar No. 0095044
500 Australian Avenue, Suite 400
West Palm Beach, FL  33401
(561) 820-8711
(561) 820-8777 (Fax)
Lothrop.Morris@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was mailed on May 3, 2004 to Michael David Harland, Reg. No. 71965-004, FDOC No. B009661, P.O. Box 872, Fresno, CA 93712.

_____
LOTHROP MORRIS
ASSISTANT UNITED STATES ATTORNEY

# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-80094-CR-MIDDLEBROOKS/JOHNSON

UNITED STATES OF AMERICA,
    Plaintiff
vs.

MICHAEL DAVID HARLAND,
    Defendant
_____/

## AFFIDAVIT

On December 6, 2002 my former client, Michael Harland, was sentenced by Judge Donald M. Middlebrooks. Mr. Harland's sentence included a two (2) level upward departure from his sentencing guidelines.

After the hearing and inside the courtroom I recall specifically advising Mr. Harland of his appellate rights. I advised him that we could appeal the Court's grounds for upward departure. I reiterated to him that the Judge made it very clear in his language at the sentencing that should the matter be revisited at a resentencing, he would again be sentenced to the exact same amount of time. I therefore advised that an appellate challenge, even if partially successful, would still result in the same sentence. Mr. Harland never advised me to appeal his sentence.

_____
Scott I. Suskauer
FL Bar No. 0776475
1601 Forum Place, Suite 1200
West Palm Beach, FL 33401
(561) 687-7866

STATE OF FLORIDA
COUNTY OF PALM BEACH

    The foregoing instrument was acknowledged before me this 28 day of April, 2004, Scott I. Suskauer who is personally known to me or who produced _____ as identification and who did (did not) take an oath.

_____
Notary Public, Florida

My Commission Expires



Julie E Vaccaro
My Commission DD068679
Expires February 03, 2006